## T. C. BALDING v. STATE.

No. A-10275. May 26, 1943.

(138 P. 2d 132.)

W. H. Cooper, of Anadarko, and Walter Hubbell, of Walters, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, T. C. Balding, was charged by the information in the district court of Caddo county with the crime of rape in the first degree, was tried, convicted and sentenced to serve 15 years in the State Penitentiary, and has appealed.

The defendant at the time of the alleged offense was a teacher in the eighth grade at the Bridgeport school and also director of the band. The prosecutrix was 13 years old at the time of the alleged assault and one of the pupils in certain classes taught by the defendant. The alleged act, according to the prosecutrix, occurred between 2 and 3 o'clock p.m. on January 24, 1941, in a room adjacent to the superintendent's office in the Bridgeport school building.

One of the assignments of error is that the evidence of the state is wholly insufficient to sustain the judgment of conviction.

We shall not undertake to give a review of the evidence for the reason that on account of error in the proceedings, which will be hereinafter discussed, it is necessary that this case be reversed for a new trial. It is sufficient for us to state that although the evidence of the defendant, if believed by a jury, shows that it was wholly impossible for the defendant to have committed the crime at the time and place related by the prosecutrix, yet the testimony of the prosecutrix is coupled with enough circumstances that the issue became one for the determination of a jury under proper instructions. We shall not substitute our judgment for that of a jury, who heard the testimony and was able to observe the demeanor of the witnesses and

were in a better position to judge as to their truthfulness than the members of this court.

It is next insisted that the court erred in admitting in evidence an alleged confession of defendant made on the 29th day of January, 1941, while locked in the basement of the school building, in the presence of H. A. Simmons, superintendent of schools, and the three members of the school board, one of which was the deputy sheriff; the said alleged confession being the result of and procured by force and violence; and further erred in admitting in evidence a statement dictated by the said H. A. Simmons on the same date about two hours after the assault made upon the defendant in the basement of the school building, which said alleged confession was given as a result of threats and promises of reward.

At the time this case was set for oral argument, the Assistant Attorney General who appeared on behalf of the state stated in open court that he was of the opinion that the court committed reversible error in admitting in evidence these two alleged confessions, and that this court should, for that reason, reverse and remand the case for a new trial. No further appearance has been made by the state in this cause and no brief was filed in opposition to the very excellent brief presented on behalf of the defendant.

There is little dispute as to the facts surrounding the giving of the two alleged confessions. The school board members, the superintendent, and the defendant all testified concerning the occurrences at the time the first alleged confession was given. The defendant was taken to the basement of the school building by the superintendent. There he was confronted by the three school board members, one of whom was the local deputy sher-

iff. The superintendent, a much larger man than defendant, accused defendant of raping the Peck girl five days previous to that time. The defendant first denied the accusation. The superintendent stated "You did too", to which the defendant replied "I did not." After the second denial the superintendent struck the defendant a hard blow on the side of the head with his fist, breaking the skin and knocking the defendant back against the wall. After this blow was struck he again accused the defendant and the defendant again denied the charge. The superintendent then struck him another severe blow just above the ear, again breaking the skin and causing his ear to bleed. After this blow was struck the superintendent again stated: "You know you did it", to which the defendant replied "Yes."

Immediately after the giving of this alleged confession the defendant was loaded into the car of the superintendent and brought to the State Capitol allegedly for the purpose of having his certificate to teach school revoked. When the defendant first entered the superintendent's car, the superintendent had told him that the father of the little girl was collecting a mob, and that he, the superintendent, wanted to get him away as quickly as possible. After arriving at Oklahoma City the superintendent dictated and the defendant wrote a statement addressed to the State Board of Education in which the defendant said he was guilty of the crime of rape and was asking that his certificate to teach school be revoked.

According to the testimony of the defendant the superintendent said that he would send him to the penitentiary if he did not sign the statement, but that if he would sign the statement it would be used only for the purpose of getting his license to teach revoked and that nothing

further would be done about the case if the defendant would leave the town of Bridgeport. No one was present when the statement was written except defendant, the superintendent and the deputy sheriff. It is undisputed that after the defendant signed the written statement at Oklahoma City he was released and returned home, took his wife and baby and left Bridgeport for the town of Walters, where he was arrested the next afternoon. The superintendent admitted when testifying concerning this last transaction that he threatened the defendant with the penitentiary if he did not sign the confession, but that he did not threaten him with physical violence at that time.

The defendant was arrested in the evening of the following day after his return from Oklahoma City. The county health doctor testified that he was called to the jail to examine the defendant shortly after he was incarcerated and found the defendant suffering from a contusion or bruise on the side of his head and complaining of severe headaches. That he prescribed hot applications for the injury.

After hearing the evidence concerning the two alleged confessions, the trial court admitted them in evidence, but instructed the jury that if they should find from the evidence that the statements were involuntarily made that they should disregard them.

Where the competency of a confession is challenged on the ground that, if made, it was not voluntary, its admissibility is primarily a question for the court. In the absence of the jury, the court should hear the evidence offered respecting the facts and circumstances attending such alleged confession, and the burden is on the defendant to show that it was procured by such means or under

such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact. If it is held competent, and proof of the same admissible, the defendant is entitled to have the evidence in regard to the facts and circumstances under which it was made given anew to the jury, not that the jury may pass upon its competency or admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence, and the jury may disregard it if they are not satisfied that it was voluntarily made. Pressley et al. v. State, 71 Okla.Cr. 436, 112 P. 2d 809.

If there had been a dispute in the testimony of the defendant and the other parties who heard the alleged confession as to the occurrences just preceding the giving of the statement, there would have been some ground for the action of the court in admitting the confession in evidence and then allowing all of the facts and circumstances surrounding such alleged confession to go to the jury for such weight as evidence as they might see fit to give it. However, here all the witnesses admit that the defendant was taken to a locked room in the basement of the school building by his superior and was there struck until he allegedly confessed his guilt.

In the case of Williams v. State, 65 Okla. Cr. 336, 86 P. 2d 1015, 1018, we find the following:

"Extrajudicial confessions are those which are made by the defendant out of court, whether to an official or nonofficial person. It is elementary law that such confessions, in order to be admissible, must be entirely free and voluntary. The rule is well established that confessions induced by a promise of benefit or a threat of harm, made to the defendant by a prosecuting attorney or an officer having him in custody, or by anyone having author-

ity over him, or made by a private person in the presence of one whose acquiescence may be presumed, will be deemed involuntary, and will be inadmissible as evidence. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A. 1917D, 383. . . .

"Bishop says:

" 'The doctrine, in its essence and divested of its technicalities, is that a defendant's confession is admissible in evidence against him if made freely and without the hope of benefit to his cause; otherwise it is rejected, since its purpose may have been to secure such benefit rather than to disclose the truth.' Bish. New Cr. Proc. par. 1217.

"As Mr. Wharton has well said:

" 'The real question is whether there has been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from the fear of the threat, or hope of profit from the promise.' Wharton, Cr. Ev. § 658."

Involuntary confessions are rejected for two reasons. The first is that to secure a confession from a defendant either through threats or promises violates the constitutional provision protecting a person against being forced to give evidence which will tend to incriminate him (Constitution, article 2, sec. 21); secondly, because they are testimonially unreliable and untrustworthy.

In Coleman v. State, 70 Okla. Cr. 246, 104 P. 2d 1004, 1008, 105 P. 2d 431, it is held:

"A confession in order to be admissible must be free and voluntary. It must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, nor by the exertion of any improper influences." See, also, Mays v. State, 19 Okla. Cr. 102, 197 P. 1064; Taylor v. State, 27 Okla. Cr. 165, 225 P. 988.

It is our conclusion, in accordance with the foregoing authorities, that both of these alleged confessions were involuntarily made and should not have been received in evidence. The proof is not so strong as to the involuntary character of the second confession, but it was made within two hours after the first confession was made and while the defendant admittedly was still bleeding from the wound in his ear. It is apparent from the testimony of the superintendent that when the defendant was holding the written statement in his hand and before he signed and delivered it to the superintendent, in response to the inquiry of the defendant, "How do I know you are not going to use this to try to send me to the penitentiary?", the superintendent replied "You can tear it up if you want to, but if you do we will send you to the penitentiary." It is apparent also that the superintendent promised that the statement would be used for no other purpose than to get his license to teach revoked, and that as quickly as it was signed he would be released. These circumstances, coupled with the closeness in time to the first alleged confession which was undisputedly obtained by force, and further considered with the fact that the representative of the state, upon whom rests the burden of presenting the views of the prosecution, has stated in open court to us that in his opinion the confession was inadmissible, are sufficient to require us to sustain this contention of defendant.

There are other assignments of error, but they are not of such importance as to require a discussion.

For the reasons hereinabove stated, the judgment of the district court of Caddo county is reversed and this cause is remanded for further proceedings consistent with the views herein expressed.

BAREFOOT and DOYLE, JJ., concur.