STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
BENJAMIN PETROLIA, DEFENDANT-APPELLANT.

Argued April 23, 1956—Decided May 7, 1956.

454

*Mr. Frank B. Bozza* argued the cause for appellant.

*Mr. Archibald Kreiger,* Deputy Attorney-General, Acting Assistant Prosecutor, argued the cause for the State (*Mr. Charles S. Joelson,* Deputy Attorney-General, Acting Prosecutor of Passaic County, attorney).

The opinion of the court was delivered by

WACHENFELD, J. This appeal is from a judgment of the Appellate Division dismissing an appeal from a judgment of conviction for armed robbery entered in the Passaic County Court. We granted certification. *State v. Petrolia*, 20 *N. J.* 138 (1955).

At about 2 P. M. on August 4, 1950 two armed men entered the offices of L. Stein & Company in the City of Paterson and robbed the payroll on which the plant employees were then working. The bandits ran from the plant, and as they did so the ensuing commotion inside the offices attracted the attention of a police officer who was stationed nearby. The officer, Kearns, saw the bandits emerge from the building, enter into a car being driven by a third person, and drive away. Kearns commandeered a passing truck and pursued the fleeing car. After a chase of several blocks, the get-away car collided with another automobile at an intersection. The driver, a heavy-set man, staggered out of the car, followed by the two stick-up men, and the three of them fled. Officer Kearns, with the assistance of a motorcycle patrolman who came upon the scene, gave chase and together they apprehended the two stick-up men, James Boeri and Raymond Ramirez. However, the heavy-set man escaped.

Later the same day the police ascertained that the get-away car had been stolen the night before in Hackensack from a man named Joseph Petrolia. Petrolia was brought to Paterson police headquarters, where he was questioned and the information elicited that he had two brothers, one named Benjamin, who is the present defendant. The police obtained a picture of Benjamin, which was shown to Boeri and Ramirez, and they positively identified him as the man who had driven the get-away car.

On August 7 the Paterson police were advised that Benjamin Petrolia had been taken into custody in Passaic, and the defendant was brought to the Paterson police station later the same day. He was placed in a line-up and identified by his alleged accomplices and then interrogated. He signed a confession, of which more hereafter.

Subsequently, the defendant was arraigned and was admitted to bail in the amount of $15,000. Not long thereafter he fled the State and went to live in Chicago under an assumed name. He was apprehended in 1954 and brought back for trial.

In the meantime, between August 1950 and October 1954, the defendant's alleged confederates, Ramirez and Boeri, pleaded *non vult* to charges of armed robbery and received prison sentences.

The defendant offered an alibi defense at the trial, but in view of our disposition of the appeal, we need not detail the substantial evidence which the State adduced to prove the defendant's guilt. However, included in the evidence which the State offered was the confession signed by the defendant following his interrogation at the Paterson police headquarters on August 7, 1950. The admission of this document was objected to by the defendant, who claimed the confession was obtained by the use of brutality on the part of the police officers who interrogated him. After hearing the State's and the defendant's witnesses, the court admitted the confession into evidence.

The jury's verdict of guilty was returned on October 25, 1954 and sentence was imposed upon the defendant on November 19, 1954. However, because of an error in the sentence imposed, the defendant was resentenced three days later, on November 22, 1954.

On the day of resentencing, the defendant filed a motion for a new trial on the ground of newly discovered evidence. This motion was taken under advisement by the court and no decision was made thereon until March 18, 1955, when an order denying the motion was entered. Notice of appeal was filed on May 4, 1955, well within three months from the entry of the order denying the motion for a new trial, but more than three months following the entry of the judgment of conviction.

*R. R.* 1:3–1(a) provides that an appeal shall be taken:

"* * * within the following periods of time after the entry of judgment, order or determination appealed from:

(a) 3 months—final judgments in criminal causes in the trial divisions of the Superior Courts and county courts."

However, *R. R.* 1:3–3(*c*) provides for a tolling of the time in which to appeal in criminal causes where "a motion for a new trial or an arrest of judgment [is] made within 10 days after the determination of guilt * * *."

The State urges before us, and the Appellate Division held below, that inasmuch as the motion for a new trial in the case *sub judice* was not made within ten days following the jury's verdict, the making of the motion was ineffective to toll the time in which to appeal under *R. R.* 1:3–3(*c*). The argument is based upon the supposition that the words "determination of guilt" in *R. R.* 1:3–3(*c*) refer to the jury's verdict, rather than the entry of the judgment of conviction, and concededly the motion was not made within ten days of the verdict. On the other hand, if by the phrase "determination of guilt" the rule refers to the entry of the formal judgment of conviction, then the motion for a new trial, since it was made on the same day as the entry of judgment, would have tolled the running of the time for the taking of an appeal.

*R. R.* 1:3–3(*c*), properly interpreted, tolls the time in which to take an appeal only where a motion for a new trial is made within ten days of the rendition of the verdict, and not the entry of judgment. The language used in the rule has obvious reference to *R. R.* 3:7–11(*a*), which deals with motions for new trials in criminal causes and provides that where such motions are based upon any ground other than newly discovered evidence, they should be made "within 10 days after the verdict or finding of guilty." While it is true that a motion for a new trial based upon the ground of newly discovered evidence can be made at any time, it is equally obvious that such a motion can have no tolling effect unless made within ten days; otherwise a defendant would be enabled to prolong the time in which to appeal almost indefinitely through the medium of post-trial motions.

We think, however, there is sufficient ambiguity in the language of *R. R.* 1:3–3(*c*) to have been the cause of

misinterpretation even by astute counsel. In a criminal case no defendant should be prejudiced by having his appeal dismissed when the rule in reference to his appeal might possibly be the subject of conflicting interpretations. The rules are designed to facilitate and promote justice, not to prevent it. Hence, we pass to a consideration of the merits of the appeal, which, in our view, pertain solely to the admission of the confession into evidence.

In support of the admissibility of the confession, the State offered the testimony of the police officers and the stenographer who were present at the time the confession was given, all of whom denied any threats, force or violence had been used to obtain the defendant's signature to the confession. However, the warden of the Passaic County Jail, called by the defendant, testified that when Petrolia was placed in his custody his eyes were discolored. The assistant county physician, Dr. Stokes, admitted by the State to be a reputable physician, was also called by the defendant and he testified he had examined Petrolia at the county jail on August 11. Using his medical records to refresh his recollection, he described Petrolia's condition as follows:

"Both eyes were black and blue. The right was worse. There was a discoloration at the level of the tenth and eleventh rib * * * about three inches long and one inch wide, located towards the mid-line and below the nipple three inches. * * * It was a pretty extensive bruise. There was a discoloration three inches long by one inch in width in the upper right rectus muscle * * * and that was an extensive bruise. Discoloration three inches long by one inch wide, left mid-axilla, at the level of the twelfth rib * * * and that was an extensive bruise. Five ecchymotic spots * * * in the right and mid-axillary line * * * at the base of the eighth, ninth, and tenth ribs * * * which indicate * * * possible rib injury. Discoloration of right ear involving three-quarters of the ear. * * * Moderate discoloration of the right ear and one of left ear. Sixth, mild hemorrhage into the right external auditory canal. The drum was normal."

The doctor testified he prescribed medication and treated the defendant until September 22, 1955. He was then asked whether in his opinion the injuries he observed upon the

defendant's body came from a trauma received in an automobile accident or whether the injuries "were the result of human force." The doctor replied he believed it to be very unlikely the injuries were the result of an accident, "because the injuries were diffused and scattered. You wouldn't expect that in an accident. It almost seems that different parts of the body were attacked at different times." He further acknowledged the injuries appeared to him to have been administered by "blows."

 Usually where there is evidence to support the confession, even though disputed, this court will not intervene. *State v. Cole,* 136 *N. J. L.* 606 (*E. & A.* 1948). As was said in *State v. Cleveland,* 6 *N. J.* 316, 326 (1951):

"* * * whether * * * a confession is voluntary depends on the facts of each case. Its competency is primarily for the trial judge and the weight to be given it is determined by the jury." *State v. Pierce,* 4 *N. J.* 252 (1950); *State v. Bunk,* 4 *N. J.* 461 (1950); *State v. Cooper,* 10 *N. J.* 532 (1952); *State v. Vaszorich,* 13 *N. J.* 99 (1953).

The primary responsibility placed upon the trial court, we think, dictated a rejection of the proffered confession.

██ By a marked preponderance of the evidence, it was clearly the product of unlawful physical applications which destroyed any semblance of its being voluntary within our decisions requiring a confession to be an "expression of free choice." *State v. Cooper, supra.*

Here there was persuasive physical evidence of bruises, contusions and injuries inflicted upon the defendant while in the custody of the police, their existence not being disputed by a single witness on behalf of the State, which relied merely upon a supposition completely shattered by the defendant's medical testimony. The denial by the police, in accord with the common pattern, under these circumstances gave little comfort to the State's position.

The availability of the automobile accident as an explanation for the physical injuries was effectively foreclosed by the Paterson policeman Dworak, who took the defendant into custody from the Passaic police and brought him to

Paterson police headquarters. He testified that when the prisoner was surrendered to him, neither his eyes nor his ears were bloody or discolored, and he identified a picture taken of the defendant at the Paterson police headquarters after his arrival there, disclosing the defendant's face to be free of any discoloration or marks of violence.

A confession induced by physical compulsion has no evidential value and should not be recognized in a civilized system of justice. *State v. Cooper*, 2 *N. J.* 540 (1949).

The admission of the confession, under the facts and circumstances here narrated, cannot be said to have been harmless because there was ample other evidence of guilt. What consideration it was given by the jury cannot be proved. It may have been discredited entirely and ignored by the jury, but, on the contrary, it may well have been the motivating reason for the jury's determination of guilt.

The judgment below is reversed for the reasons herein expressed and the cause remanded for a new trial.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For affirmance*—None.