449 P.2d 46

STATE of Arizona, Appellee,

v.

Gloria HESS, Appellant.

No. 2 CA–CR 131.

Court of Appeals of Arizona.

Jan. 14, 1969.

Rehearing Denied Feb. 20, 1969.

Review Denied March 18, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

S. Jeffrey Minker, Tucson, for appellant.

KRUCKER, Judge.

Defendant was convicted of arson, five counts, in the Superior Court of Pima County, and from her conviction she brings this appeal.

Between May 31 and June 2, 1967, six fires occurred at a store in Tucson, and at this time defendant Hess was an employee of the store. On Friday, June 2, an investigation was commenced by the store to determine the cause of the fires, and several of the employees, including the defendant, were questioned and given "lie detector" tests by investigators hired by the store.

The investigators were trained in the administration of polygraph tests, and on that day the person who gave defendant her first polygraph test, Mr. Jones, told defendant that he thought she was not telling the truth in her answers to his questions.

On Saturday, June 3, defendant was given a second polygraph test by the other member of the investigating team, Mr. Lussier, and on Sunday, June 4, defendant was questioned for about three hours by both of the investigators. At the end of the Sunday session, defendant made a handwritten confession in narrative form.

This confession was admitted into evidence, and defendant asserts its admission as error, claiming the confession to be not voluntarily made for two reasons: (1) That the confession was induced by promises of immunity made to defendant, and (2) That the interrogation and resulting confession occurred without advising defendant of her constitutional rights.

During the course of the trial a hearing was held out of the presence of the jury to make a preliminary determination of the voluntariness of the confession. In addition to the evidence adduced at the hearing, the court agreed to consider the testimony of a witness who would not be able to attend until the second day of the trial in making its determination of voluntariness. At this hearing it was the defendant's testimony that she was given assurances by Jones that, if she confessed, the matter would be handled only by the store, and that by making the confession the defendant would be able to avoid bringing embarrassment and scandal upon her family. The defendant's mother testified that she had repeatedly attempted to contact the defendant during the three-hour interrogation on Sunday, and that she had been advised that the defendant was on her break each time that she called. The witness who testified later, a co-employee of

the defendant at the time of the fires, testified that the person who questioned her had advised her that if she confessed, the matter would be handled only by the store and no publicity would result. Both this witness and the defendant testified that they understood that they did not have to submit to questioning by the investigating personnel. Mr. Jones testified that he explained to the defendant that the taking of the polygraph test was voluntary and she was free to go if she wished. He also testified that he repeatedly emphasized to the defendant that he could make no promises of immunity and he had no power to do so. He told defendant she did not have to make a statement and if she did so, it would only be in accordance with her wishes.

Jones expressly denied that he told the defendant that if she confessed that the matter would be handled only by the store, and he also denied telling her it would go easier on her if she confessed. He said he never told the defendant the police would not get the confession, the subject of scandal was never even discussed, and he stated that no promises whatsoever were made.

Jones testified that the defendant did not need help in writing the statement out describing the details of the fires, and she did so without hesitation after she admitted setting them. Jones further testified that the defendant was told she could leave at any time and she could have food or drink if she desired. He also stated that the store was not told to prevent defendant or anyone else from receiving telephone calls.

A confession made to a private individual, neither employed by nor acting for the State, may, nevertheless, be involuntary in case it was induced by promises that no complaint to the authorities would be made. Lawton v. State, 152 Fla. 821, 13 So.2d 211 (1943); Fisher v. State, 379 S.W.2d 900 (Tex.Cr.App.1964); State v. Ely, 237 Or. 329, 390 P.2d 348 (1964).

However, the evidence is in sharp conflict as to whether promises were made to the defendant, and a question of fact was presented.

"* * * The determination of the voluntariness of a confession is a preliminary question of law and fact for the trial judge. His determination that a confession is voluntary will not be disturbed on appeal unless there is a clear and manifest error." State v. Sanders, 101 Ariz. 410, 412, 420 P.2d 281, 283 (1966).

There is substantial support in the record for the conclusions reached by the trial court in this matter, and, therefore, the trial court did not err in finding that the confession was not induced by promises of immunity.

Defendant has claimed that the confession was involuntary on the additional ground that she was not advised of her constitutional rights as required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is undisputed that defendant was not so advised at the time she was questioned by the persons investigating the fires.

The persons conducting the investigation were employees of a private consulting firm which had been hired by the store to investigate the cause of the fires. Mr. Jones testified that he told defendant about his status as a private investigator at the time of their first meeting.

Defendant was repeatedly advised that her submission to the polygraph was voluntary and to submit to these tests would be her decision. The questioning sessions took place in various offices and rooms in the store, with the defendant and one or both of the investigators present. The investigators had no actual authority to restrain the defendant, and at no time was she told that the contrary was true. The defendant was told she was free to leave if she desired, and her testimony reflects that this was her understanding.

Miranda v. Arizona, supra, prefaces its opinion with the following remarks:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean *questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.* * * *" (Emphasis supplied) 384 U.S. at 444, 86 S.Ct. at 1612.

In describing the cases before it, the Court used the following language:

"* * * In each, the defendant was questioned *by police officers, detectives, or a prosecuting attorney* in a room in which he was cut off from the outside world. In none of these cases was the defendant given a full and effective warning of his rights at the outset of the interrogation process. In all the cases, the questioning elicited oral admissions, and in three of them, signed statements as well which were admitted at their trials. They all thus share salient features—*incommunicado interrogations of individuals in a police-dominated atmosphere,* resulting in self-incriminating statements, without full warnings of constitutional rights." (Emphasis supplied) 384 U.S. at 445, 86 S.Ct. at 1612.

In the case before us we find that the interrogation of the defendant was neither custodial, nor was it conducted by law enforcement officials or anyone else acting in their behalf. Defendant has cited no authority which would indicate that the persons conducting this investigation were required to advise defendant of her constitutional rights to silence and to counsel before any admissions or confessions made by her in the course of the questioning could be used against her in a subsequent criminal proceeding. Numerous cases have held to the contrary. Carter v. United States, 362 F.2d 257 (5th Cir. 1966); Truex v. State, 282 Ala. 191, 210 So.2d 424 (1968); People v. Ing, 65 Cal.2d 603, 55 Cal.Rptr. 902, 422 P.2d 590 (1967); People v. Clark, 252 Cal.App.2d 524, 60 Cal.Rptr. 524 (1967); People v. Wright, 249 Cal.App.2d 692, 57 Cal.Rptr. 781 (1967); People v. Crabtree, 239 Cal.App.2d 789, 49 Cal.Rptr. 285 (1966); State v. Masters, 154 N.W.2d 133 (Iowa 1967); Hubbard v. State, 2 Md. App. 364, 234 A.2d 775 (1967); Chadwick v. State, 219 Tenn. 296, 409 S.W.2d 367 (1966).

■ We are of the opinion that where the defendant is not in custody, and where the interrogation is conducted by private individuals, then the individuals conducting the interrogation are not required to advise the defendant that she may remain silent or that she may have counsel present or provided for her in order to make any confession obtained as a result of the interrogation admissible as evidence in a subsequent criminal proceeding.

Defendant next claims error in the admission of opinion evidence as to the cause of the fires.

Two members of the Tucson Fire Department were examined under oath; each testified that he had made an investigation of the fires on the scene, and then each recited his professional experience, described materials which he had read on the subject, and each testified that he had taken a course in which the subject of causation of fires was taught. The trial court determined that each of these witnesses was qualified to render an opinion as to the cause of the fires.

■ In this State the determination of whether a witness, be he expert or otherwise, is competent to testify on a given subject is a question which is directed to

the discretion of the trial court, and appellate relief will be available only in the event that this discretion was abused. The fact that defendant may be able to show limitations on the qualifications of these witnesses may be used to lessen the weight to be given to their testimony, but it is not enough to render the opinion evidence inadmissible unless, in admitting the evidence, the trial court abused its discretion. Carrel v. Lux, 101 Ariz. 430, 420 P.2d 564 (1966). See, Udall, Arizona Law of Evidence, § 23 et seq. We find no abuse of discretion in this case.

The final error claimed by the defendant in this appeal deals with the trial court's refusal to instruct the jury on the defense of alibi, at the timely request of defendant.

■ "Alibi," in the context of criminal prosecution, is a defense which, if proven, demonstrates that the accused had no opportunity to commit the offense charged for the reason that he was not present. Azbill v. State, 19 Ariz. 499, 172 P. 658 (1918).

"* * * It is an effort to show defendant did not commit the crime because, at the time, he was in another place so far away, or in a situation preventing his doing the thing charged against him." 19 Ariz. at 501, 172 P. at 659.

■ A jury is sworn to acquit the defendant if guilt is not proven beyond a reasonable doubt, and if there is any reasonable doubt as to guilt, that doubt should be resolved in favor of the defendant and a verdict of not guilty returned.

If there is evidence adduced in a given case that the defendant was at another place or at a place so removed that he could not have been present to commit the crime, and if presence is necessary for convic-tion,[1] then that evidence, if it raised a reasonable doubt to be considered and acted upon by men of common sense and good judgment, would result in an acquittal under the reasonable doubt instruction.

■ The nature of the "defense" of alibi is not that of confession and avoidance as are coercion, duress, self-defense and insanity; alibi, if successful, is proven under the aegis of a general denial. State v. Norman, 103 Ohio St. 541, 134 N.E. 474 (1921), quoted with approval in Singh v. State, 35 Ariz. 432, 280 P. 672, 67 A.L.R. 129 (1929). It is true that our criminal rules require that a defendant who would assert an alibi must give notice of his intention to do so, listing the witnesses who shall testify to establish the alibi. Rule 192, subd. B, Rules of Criminal Procedure, 17 A.R.S. However, the purpose of this rule is to guard against the wrongful use of alibi evidence and to give the prosecution time and information to investigate the sources of this evidence. State v. Martin, 2 Ariz.App. 510, 410 P.2d 132 (1966). We find nothing in our law which indicates that alibi constitutes a "special" defense; evidence in support thereof merely tends to establish that one charged with a crime was not present at the place where the crime was committed, and for that reason is not guilty of having committed it.

■ In light of the foregoing, we are of the opinion that the trial court cannot err in refusing to instruct the jury with a specific charge relating to alibi, providing proper and adequate instructions are given on the elements of the crime charged and on reasonable doubt. Parsley v. Commonwealth, 321 S.W.2d 259 (Ky.1958); State v. Baker, 246 Iowa 215, 66 N.W.2d 303 (1954); People v. Powell, 83 Cal.App. 62, 256 P. 561 (1927); Jenkins v. State, 22 Wyo. 34, 134 P. 260, 135 P. 749 (1913).

---

1. It is significant that in Arizona there are myriad possibilities of conviction as a principal although the accused be not present at the time and place of the criminal activity. A.R.S. § 13–139, 5 A.R.S.

For the general proposition that a specific instruction is required only where the defense is in the nature of confession and avoidance, see, 23A C.J.S. Criminal Law § 1199. Cf. as to alibi, 23A C.J.S. Criminal Law § 1203.

Our Supreme Court has never held that such an instruction was required[2] but the court has seriously questioned the giving of an alibi instruction, setting forth circumstances the absence of which would make it error for the court to charge the jury as to alibi. State v. Berry, 101 Ariz. 310, 419 P.2d 337 (1966); Singh v. State, supra.

This court is not unaware that the position taken above has not been the one endorsed by the majority of the jurisdictions which have undertaken to pass on the question, see, 118 A.L.R. 1303, at 1312, however, we are convinced that the more sound rule of law is that espoused above.

■ We note further that in the case before us the evidence adduced by defendant in support of alibi was not sufficient, if believed, to negate the presence of the defendant at the time and place that the third fire started. Under such circumstances, and independent of whether or not an instruction may be required in a proper case, it is not error to refuse to instruct on alibi. State v. Berry, supra.

The judgment is affirmed.

MOLLOY, C. J., and HATHAWAY, J., concurs.

2. In McCann v. State, 20 Ariz. 489, 182 P. 96 (1919), we note the following language:
"At the trial the defendant sought to prove his whereabouts on November 19th, and succeeding days, for the purpose of showing that he could not have been present at the scene of the homicide. The case, therefore, was one calling for an instruction on the law relating to *alibi*, and the court accordingly gave an instruction on that subject. * * * "
The issue presented in that case in relation to alibi dealt with the substance of

the instruction; the issue, "Was the instruction *required*?", was not presented and the remarks of the court on that occasion are clearly *obiter*. That the case was one "calling for an instruction" on alibi, appears to this court to be a statement that such an instruction would be appropriate; i. e., that it could be properly given. However, it does not follow that because an instruction *may* be given without requiring reversal, that it then becomes reversible error to refuse to give it. See, City of Phoenix v. Camfield, 97 Ariz. 316, 400 P.2d 115 (1965).