**UNITED STATES of America,
Appellee,**

v.

**Nicholas P. ANTONELLI, Defendant-
Appellant.**

**No. 220, Docket 34489.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1970.

Decided Nov. 24, 1970.

---

**336**

Allen S. Stim, New York City, for defendant-appellant.

Shirah Neiman, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty. S. D. New York, and Arthur A. Munisteri, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

MOORE, Circuit Judge:

Defendant-appellant Nicholas Antonelli appeals from a judgment of conviction after a jury trial upon a charge of unlawful possession of goods stolen from a foreign shipment. On August 26, 1968 Antonelli was stopped at the gate of Pier 90 in New York City, where he worked, by a gateman employed by a private detective agency to guard the pier on behalf of the Italian Line. The gateman requested Antonelli to open the trunk of his car for a routine search of his car. Antonelli voluntarily did so. In the trunk were six burlap bags which contained several thousand dollars worth of recently imported men's gloves and sweaters which had mysteriously disappeared from the docks. Antonelli importuned the gateman to "let me go," to "let me cop a plea" and "Don't please, say I found these at the end of the pier, I was bringing them to you," amongst other statements.

We are asked on this appeal to construe Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as extending to inculpatory statements made by appellant while in the custody of private security guards, who admittedly gave appellant none of the so-called *Miranda* warnings. We are also urged to reverse the trial court below on the ground that it admitted evidence of the stolen goods discovered in appellant's car as fatally tainted "fruit of the poisonous tree." The sufficiency of the evidence is also challenged. We affirm.

We assume *arguendo* that there was "custodial interrogation." The security guards, however, had no pertinent official or *de facto* connection with any public law enforcement agency. Their primary task and their employment was to protect the private property on the docks. We further assume *arguendo* that the statements made by appellant to the guards were not of a spontaneous nature, so as to fall within one of the special exceptions to *Miranda*. Finally, we are satisfied that there was no gov-

---

* Of the Third Circuit, sitting by designation.

ernmental knowledge or instigation of, influence on, or participation in any of the actions surrounding the taking of appellant into custody, which produced the statements unsuccessfully sought to be suppressed prior to trial.

█ It is suggested that certain language in *Miranda* bespeaks an expansive reading to be given the rules promulgated by the Supreme Court to protect criminal defendants' Fifth and Sixth Amendment rights. *See, e. g.*, 384 U.S. at 467, 86 S.Ct. 1602. However, the Fifth Amendment privilege against self-incrimination does not require the giving of constitutional warnings by private citizens or security personnel employed thereby who take a suspect into custody. Beyond that, the discussion in parts I and II of the *Miranda* opinion, 384 U.S. at 445–466, 86 S.Ct. 1602, which leads up to the passage relied upon and was designed to demonstrate that interrogation may be compulsive even when there is no legal power to require an answer, was concerned solely with activity by the police or other "law enforcement officers," 384 U.S. at 461, 86 S.Ct. 1602, or government agencies. A private security guard stands no differently from the private citizen who has employed him. It would be a strange doctrine that would so condition the privilege of a citizen to question another whom he suspects of stealing his property that incriminating answers would be excluded as evidence in a criminal trial unless the citizen had warned the marauder that he need not answer.

The federal exclusionary rule enforcing adherence to the intendment of the Fifth Amendment, like the Fourth Amendment, has long been construed as "a restraint upon the activities of sovereign authority" and not as "a limitation upon other than governmental agencies." Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); cf. United States v. Blum, 329 F.2d 49, 52 (2d Cir.), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1045 (1964); Barnes v. United States, 373 F.2d 517, 518 (5th Cir. 1967) (per curiam); United States v. Goldberg, 330 F.2d 30, 35 (3d Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); compare Corngold v. United States, 367 F.2d 1, 3–5 (9th Cir. 1966) (en banc).

Several state courts have ruled on the question presented to this court, and we believe their decisions to be persuasive. In particular, we note with approval People v. Frank, 52 Misc.2d 266, 275 N.Y.S.2d 570, 572–573 (Sup.Ct.1966); accord, People v. Williams, 53 Misc.2d 1086, 281 N.Y.S.2d 251, 255 (Syracuse City Ct. 1967); and Schaumberg v. State, 83 Nev. 372, 374, 432 P.2d 500, 501 (1967); accord, People v. Omell, 15 Mich.App. 154, 166 N.W.2d 279, 281 (Ct. App., Div. 2, 1968); State v. Valpredo, 75 Wash.2d 368, 450 P.2d 979, 982 (1969). See also People v. Wright, 249 Cal.App.2d 692, 693–695, 57 Cal.Rptr. 781 (Ct.App., 2d Dist. 1967); People v. Crabtree, 239 Cal.App.2d 789, 790, 49 Cal.Rptr. 285, 286 (Ct.App., 4th Dist. 1966) (pre-*Miranda*); State v. Boyd, 5 Conn.Cir. 648, 260 A.2d 618, 623 (Cir. Ct., App.Div.1969); State v. Masters, 154 N.W.2d 133, 136 (Iowa 1967); State v. Rodgers, 251 La. 953, 207 So.2d 755, 757 (1968); McElroy v. State, 204 So.2d 463, 465 (Miss.1967); Annot., 31 A.L.R.3d 565, 666–669 (1970); *Note, Admissibility of Confessions or Admissions of Accused Obtained During Custodial Interrogation by Non-Police Personnel: Are the Miranda Warnings Required?* 40 Miss.L.J. 140 (1968). Cf. Truex v. State, 282 Ala. 191, 210 So.2d 424, 425 (1968); State v. Hess, 9 Ariz. App. 29, 449 P.2d 46, 48–49 (Ct.App. 1969); People v. Hays, 250 Cal.App.2d, 96, 97–98, 58 Cal.Rptr. 241, 242–243 (Ct. App., 4th Dist. 1967); Leaver v. State, 237 N.E.2d 368, 371 (Ind.1968); State v. O'Kelly, 181 Neb. 618, 150 N.W.2d 117 (1967) (pre-*Escobedo* facts); People v. Santiago, 53 Misc.2d 264, 266, 278 N.Y. S.2d 260, 261 (Rockland Co.Ct.1967).

█ We conclude, therefore, that since appellant's statements were made to persons not law enforcement officers or their agents, there was no police or "custodial interrogation" within the

338

meaning of *Miranda,* and that no warnings need have been given. Moreover, where there is no "poisonous tree" there can be no "fruit." The evidence of appellant's inculpatory statements and of the stolen goods found in appellant's car were properly admitted at trial. Finally, we conclude that, given the above, there was more than sufficient evidence to support appellant's conviction.

The judgment below is affirmed.