61 N.J. 283 (1972)
294 A.2d 41
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RAYMOND KELLY, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued April 24, 1972.
Decided July 17, 1972.
*284 Mr. Joseph A. Fusco, Assistant Prosecutor, argued the cause for the appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. Michael A. Graham, Legal Assistant, on the brief).
Mr. Jerrold S. Fond argued the cause for the respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the Court was delivered by JACOBS, J.
The defendant was convicted of having stolen a revolver in violation of N.J.S.A. 2A:119-2. On appeal, the Appellate Division reversed and remanded for a new trial. 113 N.J. Super. 169 (1971). Thereafter we certified on the State's application. 58 N.J. 601 (1971).
*285 On the morning of September 13 Walter King arrived at the plant of Automotive Enterprises, Bloomfield, where he was employed as a receiving clerk. King also worked part-time as a night security guard for the State Patrol Service, a private nongovernmental agency, and when he arrived at Automotive Enterprises he was still wearing his guard uniform and carried a .38 caliber revolver. While he was changing into regular work clothes in the men's room at Automotive Enterprises, the 8 A.M. bell rang and he hurriedly went to work. In his haste he left his holstered gun on a wooden bench in the men's room. At about 9:30 A.M. King discovered that his gun had been stolen and he reported its disappearance to his foreman Larry Preteroti and to the Bloomfield Police Department.
The defendant Raymond Kelly was also employed by Automotive Enterprises and on September 13 he arrived at the plant along with King and others. At that time Automotive Enterprises employed seven men and a greater number of women. At 8:56 A.M. the defendant "punched out" his timecard and left the plant. He did not inform anyone that he was leaving but the foreman Preteroti saw him leave. No other employee had left the plant when King learned about the disappearance of his gun. Later, during the same day, King and Eugene Easton, who was also employed at Automotive Enterprises and was the defendant's roommate, went to the defendant's rented room in Newark in the company of police officers. They did not find the defendant nor did they locate the revolver. Although the defendant never returned to work at Automotive Enterprises, King's interest in locating him still remained.
On or about September 20 King, in the company of Perry Dye (or Dike) and Franklin Williams who were also employed by the State Patrol Service, went looking for the defendant. They were then dressed in their security guard uniforms and were led by a fourth person to the corner of Charlton and West Kinney Streets in Newark. King saw the defendant across the street and when he called to him the defendant *286 came over. According to King's testimony he asked the defendant why he had taken his gun and the defendant said, "he needed the money so he took it." Williams testified that when King asked why he stole the weapon the defendant said, "he needed the money" and that when King asked where the weapon was, "he said he had sold it to some fellow on Hunterdon Street." The defendant was arrested and later made confessing statements to a Newark police officer, in the presence of a Bloomfield police officer, but did not sign anything. After conducting a preliminary hearing with respect to the admissibility of the statements made to the police officer, the trial court ruled that the police officer could not testify as to those statements since there was no waiver by the defendant of his constitutional rights within the principles expressed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the trial court considered that Miranda was inapplicable to incriminating statements made not to police officers but to private persons such as King. It denied defense counsel's request that a preliminary hearing be conducted with respect to the legal voluntariness of the incriminating statements made to King and ruled that the jury could consider those statements along with the other evidence in the case.
At the trial, the defendant acknowledged that he left the plant during the morning of September 13 without notifying his supervisor and that he never returned to his job or to his room in Newark. He also acknowledged that he told King he had taken the gun and had sold it; but he denied that he had in fact stolen the gun and said he made up the story of having taken the gun and having sold it because he was afraid. He testified that when he first spoke to King and the others he denied taking the gun but then they "had my arms twisted about where my shoulders were" and in order to avoid getting hurt he said he had committed the theft and had sold the gun. He also testified that he later told the same thing to the police officers who arrived after he had made his statements to King. After the trial court delivered its charge *287 to which defense counsel made no objection, the jury found the defendant guilty and he was sentenced to an indeterminate term at Yardville.
On his appeal to the Appellate Division the defendant contended that Miranda was applicable to the statements made to King and that since the defendant admittedly was not given any Miranda warnings by King the statements should have been excluded without more. This contention was rejected by the Appellate Division. 113 N.J. Super. at 172. The defendant also contended that the trial court should have conducted a preliminary hearing as to the legal voluntariness of the statements made to King. The Appellate Division agreed with this contention and ordered a new trial. 113 N.J. Super. at 171.
We agree with the Appellate Division's view that since King was a private individual rather than a policeman or other governmental officer (see United States v. Antonelli, 434 F.2d 335, 337 (2 Cir.1970); People v. Frank, 52 Misc.2d 266, 275 N.Y.S.2d 570, 572-573 (Sup. Ct. 1966)), he was under no responsibility to give the Miranda warnings. Those warnings were designed to counteract the coercive nature of in-custody governmental inquiries; in State v. Williams, 59 N.J. 493, 501 (1971), the Chief Justice recently noted that we have consistently read Miranda to apply only to "custodial interrogation by the police." Cf. State v. Graves, 60 N.J. 441 (1972). Elsewhere throughout the states Miranda has been read in similarly restrictive fashion. See, e.g., State v. Bolan, 27 Ohio St.2d 15, 271 N.E.2d 839 (1971); State v. LaRose, 286 Minn. 517, 174 N.W.2d 247 (1970); State v. Hess, 9 Ariz. App. 29, 449 P.2d 46 (1969); State v. Valpredo, 75 Wash.2d 368, 450 P.2d 979 (1969); Hood v. Commonwealth, 448 S.W.2d 388 (Ky. 1969); State v. Little, 201 Kan. 94, 439 P.2d 387 (1969); Schaumberg v. State, 83 Nev. 372, 432 P.2d 500 (1967); People v. Wright, 249 Cal. App.2d 692, 57 Cal. Rptr. 781 (1967); see also 113 N.J. Super. at 172; Sable, "Miranda Warnings in Other Than Police Custodial Interrogations," *288 21 Clev. St. L. Rev. 135 (1972); Note, "Criminal Law-Admissibility of Confessions or Admissions of Accused Obtained During Custodial Interrogation by Non-Police Personnel: Are the Miranda Warnings Required?", 40 Miss. L.J. 139 (1968).
In People v. Wright, supra, a hospital security guard detained the defendant while awaiting the arrival of the police. In holding that statements made by the defendant to the guard were admissible despite the absence of warnings, the court stressed that the Supreme Court's opinion in Miranda was deliberately aimed at "police interrogation procedures" (384 U.S. at 457, 86 S.Ct. 1602, 16 L.Ed.2d at 713) and towards insuring that persons in police custody are afforded full opportunity to exercise their fifth amendment privilege against self-incrimination (384 U.S. at 460-462, 86 S.Ct. 1602, 16 L.Ed.2d at 715-716). 57 Cal. Rptr. at 781.
In Schaumberg v. State, supra, a security guard took the defendant, who repaired slot machines at Harrah's Club, to the club manager's office where he confessed that he had rigged a machine in violation of a Nevada statute. In holding that the confession was admissible though there had been no warnings, the court pointed out that Miranda was designed to prevent "oppressive police tactics" and that its thrust was aimed against the "potentiality for compulsion" (384 U.S. at 457, 86 S.Ct. 1602, 16 L.Ed.2d at 713) found in "custodial interrogation initiated by police officers." 432 P.2d at 501. See also State v. Little, supra, 439 P.2d at 391; State v. Valpredo, supra, 450 P.2d at 981.
In Hood v. Commonwealth, supra, the defendant was taken into custody on a public road by private citizens and confessed to them that he had burned barns in the vicinity. He was convicted of arson and on appeal contended that he should have received the Miranda warnings. In rejecting this contention the court said that it was convinced that Miranda did not apply to a citizen's arrest; as it put it: "A most compelling reason for rejecting the proposition that Miranda applies to a citizen's arrest lies in the fact that the *289 ordinary citizen, not being a police officer, would not have the faintest notion concerning the matter of advising of rights." 448 S.W.2d at 391.
In United States v. Antonelli, supra, the defendant was stopped at the gate of the pier where he worked and was told by the gateman, an employee of a private detective agency, to open the trunk of his car. He did so and when stolen goods were discovered he made incriminating statements to the gateman. These statements were admitted during his trial and he was convicted of possession of stolen goods. He contended on appeal that his statements should not have been admitted since he had not been given the Miranda warnings. This contention was summarily rejected by the Second Circuit in an opinion which pointed out that the fifth amendment did not require the giving of constitutional warnings by private citizens or security personnel employed by them and that Miranda "was concerned solely with activity by the police or other law enforcement officers." 434 F.2d at 337. In the course of its opinion the court voiced the thought that "a private security guard stands no differently from the private citizen who has employed him" and that "it would be a strange doctrine that would so condition the privilege of a citizen to question another whom he suspects of stealing his property that incriminating answers would be excluded as evidence in a criminal trial unless the citizen had warned the marauder the he need not answer." 434 F.2d at 337.
The line drawn in Antonelli and the other cited cases between governmental and nongovernmental interrogation for purposes of the fifth amendment is comparable to that drawn in the search and seizure cases under the fourth amendment. See Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921), where the Supreme Court pointed out that the fourth amendment was intended as a restraint upon the activities of sovereign authority and "was not intended to be a limitation upon other than governmental agencies"; see also United States *290 v. Goldberg, 330 F.2d 30, 35 (3 Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); Barnes v. United States, 373 F.2d 517, 518 (5 Cir.1967); United States v. Harper, 458 F.2d 891 (7 Cir. 1971); People v. Horman, 22 N.Y.2d 378, 292 N.Y.S.2d 874, 239 N.E.2d 625 (1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969); People v. Cheatham, 263 Cal. App.2d 458, 69 Cal. Rptr. 679 (Ct. App. 1968); cf. State v. Scrotsky, 39 N.J. 410, 416 (1963); State v. Robinson, 86 N.J. Super. 308, 315-318 (Law Div. 1965).
In People v. Horman, supra, store detectives took the defendant to the office of the store's security manager and there searched him. They found a pistol and the defendant was later convicted of unlawful possession of a firearm. In sustaining his conviction the New York Court of Appeals noted that the store detectives had no connection with the police, that the validity of their arrest of the defendant was to be measured by the standards applicable to arrests by private persons, and that the results of their search could be used in a criminal proceeding without running counter to the fourth amendment which does not proscribe "private as opposed to governmental activity." 22 N.Y.2d at 382, 292 N.Y.S.2d at 877, 239 N.E. 2d at 628. See People v. Stewart, 63 Misc.2d 601, 313 N.Y.S.2d 253 (1970). Similarly in People v. Cheatham, supra, the California Court of Appeal for the Second District rejected the defendant's contention that pill bottles taken from his person by nongovernmental personnel should have been excluded from evidence as having been seized in violation of the fourth amendment, pointing out that "evidence, illegally obtained by private citizens, does not come within the exclusionary rule." 69 Cal. Rptr. at 681. See United States v. Antonelli, supra, 434 F.2d at 337; United States v. Winbush, 428 F.2d 357 (6 Cir.), cert. denied, 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970).
In the light of all of the foregoing it is clear to us that the trial court did not legally err when it declined to *291 hold Miranda applicable. However, the defendant had also requested that it conduct a preliminary hearing on the broader issue of voluntariness, and particularly in view of his assertion that King had obtained the confessing statements through force and the threats of force he was clearly entitled to such a hearing; in this connection the fact that King was not a police officer would have no significance. See Maguire, Evidence of Guilt, at 109, n. 3 (1959); "The cases on torture and threats of torture as invalidating confessions indicate no distinction as to whether the actors are officials, private individuals, or both in concert"; see also People v. Berve, 51 Cal.2d 286, 332 P.2d 97, 101 (1958), where the California Supreme Court found "no valid grounds for distinction" in the fact that the coercion was by civilians rather than the police, citing the many cases where confessions were held inadmissible because they were made "under conditions of mob violence"; Wigmore, Evidence § 833, at 457-458 (Chadbourn Rev. 1970); McElroy v. State, 204 So.2d 463, 465 (Miss. Sup. Ct. 1967); Schaumberg v. State, supra, 432 P.2d at 501-502; State v. Ely, 237 Or. 329, 390 P.2d 348, 349 (1964); State v. Hess, supra, 449 P.2d at 48; People v. Frank, supra, 275 N.Y.S.2d at 571-572; Balding v. State, 77 Okl. Cr. 36, 138 P.2d 132, 135 (Ct. App. 1943); State v. Young, 52 La. Ann. 478, 27 So. 50 (1899); Williams v. State, 72 Miss. 117, 16 So. 296 (1894).
In Roesel v. State, 62 N.J.L. 216 (E. & A. 1898), our then court of last resort dealt at length with the common law rule of evidence which excluded, because of its probable unreliability, the confession which was "involuntary" under common law concepts, namely, one coerced through violence, threat or promise. In his opinion Justice Depue cited the English precedents including Hawkins' statement of the rule (62 N.J.L. at 226) to the effect that such confession, "whether made upon an official examination or in discourse with private persons," is not admissible in evidence. 4 Hawk. P.C. 425. So far as the procedural aspects were concerned the Justice pointed out that the State's acknowledged responsibility *292 was to show, on preliminary examination before the trial judge, that the confession was voluntary in nature. 62 N.J.L. at 236; see Maguire, supra, at 110, n. 4.
The later New Jersey cases recognized that the coerced confession was to be excluded, not only because of its probable unreliability but also because its admission would offend the community's sense of decency and fairness; and they repeatedly reaffirmed the trial court's responsibility to make a preliminary determination on the issue of voluntariness. See State v. Wise, 19 N.J. 59, 79 (1955); State v. Petrolia, 21 N.J. 453, 460 (1956); see also State v. Smith, 32 N.J. 501, 541-544 (1960), cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961). The federal decisions have of course subsumed the foregoing within their current constitutional doctrines that a confession which is "involuntary" under modern concepts, namely, the product of physical or psychological coercion, is inadmissible in evidence regardless of its truth or falsity (see Rogers v. Richmond, 365 U.S. 534, 540-541, 81 S.Ct. 735, 5 L.Ed.2d 760, 766 (1961); cf. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)), and that a determination of voluntariness must be made independently by the trial judge before the confession may be submitted to the jury. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); cf. State v. Hodgson, 44 N.J. 151, 161 (1965), cert. denied, 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966).
In support of its contention that in the instant matter the trial judge was not obliged to conduct a preliminary hearing on voluntariness, the State stresses that the cited common law New Jersey precedents involved confessions to police officers and that, as the most recent Supreme Court decision noted, the exclusionary rules are "very much aimed at deterring lawless conduct by police ..." Lego v. Twomey, supra, 404 U.S. at 489, 92 S.Ct. at 626, 30 L.Ed.2d at 627. But the common law precedents excluded confessions coerced through force or threat of force because of their *293 probable unreliability and, on that score, it could hardly matter that the force or threat was by a private person in physical control rather than by a police officer. So far as the community's sense of decency and fairness may be concerned it would appear that the use of force or threat of force by the private uniformed guard, as alleged here, would approach in offensiveness its use by a police officer. Cf. Wachenfeld, J. in State v. Petrolia, supra, 21 N.J. at 460: "A confession induced by physical compulsion has no evidential value and should not be recognized in a civilized system of justice."
Though we have not been referred to any pertinent New Jersey decisions, the judicial opinions elsewhere indicate that preliminary determinations have been regularly called for where confessions to private persons have been allegedly obtained through coercive methods. See State v. Hess, supra, 9 Ariz. App. 29, 449 P.2d 46; McElroy v. State, supra, 204 So.2d 463; People v. Frank, supra, 52 Misc.2d 266, 275 N.Y.S.2d 570; State v. Ely, supra, 237 Or. 329, 390 P.2d 348; cf. People v. Mirenda, 23 N.Y.2d 439, 297 N.Y.S. 2d 532, 245 N.E.2d 194 (1969); 11A McKinney's Consol. Laws of N.Y. Ann. § 60.45, at 258-62 (1971). In Hess the court stated that "a confession made to a private individual" may be involuntary and that the determination of voluntariness "is a preliminary question of law and fact for the trial judge." 449 P.2d at 48. In McElroy the court held that the trial judge had erred in failing to conduct a preliminary hearing as to the voluntariness of a confession made by the defendant to the owner of the cattle which he was charged with having stolen. 204 So.2d at 465. And in Frank the court held that the defendant was entitled to a preliminary hearing as to the voluntariness of a confession made by her to her employer's security guard; in the course of its opinion it said:
There can be no doubt that any statements made by the accused, whether to the police or to a private person, are admissible in evidence *294 so long as they are determined to be voluntary and not the product of coercion (Code Crim. Pro. § 395). It has always been the rule that the "`* * * true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort'" (Haynes v. State of Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513). Therefore, inasmuch as defendant is now objecting to the use of these alleged statements at trial (cf. People v. Terry, 16 N.Y.2d 731, 262 N.Y.S.2d 111, 209 N.E.2d 727) the trial court is obliged to grant a preliminary hearing (Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908) on the issue of voluntariness, no matter to whom these statements were made (People v. Harden, 17 N.Y.2d 470, 266 N.Y.S.2d 978, 214 N.E.2d 159). 275 N.Y.S.2d at 571-572.
The cited authorities clearly fix our general course though for present purposes we need not go beyond the actual situation presented to us. Here the defendant asserted at the trial that his statements to King were involuntary in that they were obtained by force or threat of force and he requested a preliminary hearing on the issue of voluntariness. He was entitled to the hearing and if the trial judge had held the hearing and had then determined that they were not made voluntarily he would of course have excluded them. On the other hand if he had found that they were made voluntarily he would have admitted them in evidence, as he did here.
While we agree with the Appellate Division that the trial judge erred in not conducting the preliminary hearing (113 N.J. Super. at 171), we do not agree that there must automatically be a new trial. We believe that the interests of justice will best be served by now having the trial judge conduct the hearing on voluntariness. If at the hearing the State fails to establish voluntariness beyond reasonable doubt (see State v. Yough, 49 N.J. 587 (1967); but cf. Lego v. Twomey, supra, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618), the defendant will be entitled to a new trial at which the statements will be excluded. If, however, the State does establish beyond reasonable doubt that the statements were voluntary, and the trial judge so determines, then the defendant's conviction may stand. Such procedure is comparable to that *295 pursued in State v. LaPierre, 39 N.J. 156, 163-165, cert. denied, 374 U.S. 852, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963) and State v. Hutchins, 43 N.J. 85, 101 (1964), s.c., 44 N.J. 49, 50 (1965) and was expressly recognized as constitutionally permissible in Jackson v. Denno, supra, 378 U.S. at 394-395, 84 S.Ct. 1774, 12 L.Ed.2d at 925-926: See Sigler v. Parker, 396 U.S. 482, 484, 90 S.Ct. 667, 24 L.Ed.2d 672, 674 (1970); cf. State v. Loray, 46 N.J. 179, 184-189 (1965).
The defendant has sought to assert before us that, in addition to the error with regard to the preliminary hearing, there was error in the charge. However, the point was not made at the trial and, indeed, when the trial judge inquired whether there were any objections to the charge, defense counsel said "I have nothing." Furthermore, our study of the entire trial record satisfies us that, in any event, the alleged error in the charge may fairly be viewed as harmless and insufficient in itself to warrant setting aside the jury's finding of guilt. Cf. State v. Hampton, 61 N.J. 250 (1972). Accordingly, the judgment of the Appellate Division is:
Modified and the cause is Remanded to the trial court for further proceedings in accordance with this opinion.
For modification and remand  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  6.
Opposed  None.