102 N.J. Super. 419 (1968)
246 A.2d 130
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FLEMING WOODARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1968.
Decided July 8, 1968.
*421 Before Judges CONFORD, LABRECQUE and HALPERN.
Miss Susan T. Sinins, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. Alan Silber, Assistant County Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
*422 HALPERN, A.J.S.C. (temporarily assigned).
Defendant appeals from a judgment of conviction for armed robbery. He bases his appeal on four grounds: (1) the court erred in allowing testimony by the State's witnesses identifying defendant before and at trial, the circumstances attending the out-of-court identification being such as to deprive him of a fair trial and a denial of due process; (2) the court erred in refusing to permit defendant to call an alibi witness; (3) the court erred in its supplementary instructions to the jury, and (4) his assigned counsel (not the present counsel on appeal) was so incompetent as to deprive him of the effective assistance of counsel.
The State's proofs indicate that about 3 P.M. on April 27, 1967 an armed robber entered the offices of the Atlantic Manufacturing Company in Newark, New Jersey, held up and robbed its executive vice-president, Joseph Skopaz, and an employee, Minerva Almodovar, and escaped with the sum of $716. The robber was not masked and stood five or six feet from the victims. Skopaz testified he was close enough to the robber so that he could count the bullets in the gun. In addition there was a short exchange of conversation between the victims and the robber. The victims furnished the police with the license number and make of the get-away car and a description of the robber.

Identification of Defendant
The day following the robbery the police showed the victims four photographs of different persons, but they were unable to identify the robber. That same day, the police paraded two men about an hour apart, on the sidewalk some seven feet in front of the Atlantic offices, while the victims peered through the slats of venetian blinds. They were unable to identify the first man. They did immediately identify defendant as the second man. Mrs. Almodovar said defendant was handcuffed to a policeman. Skopaz did not remember whether he was handcuffed. A detective testified he *423 thought the defendant was handcuffed but not to another policeman, and that the handcuffing was concealed. For purposes of this opinion we assume defendant was handcuffed in a manner apparent to the identifying witnesses.
Both victims made positive identifications of the defendant at the trial. Skopaz further testified that his identification was based on what he remembered from the robbery and was not influenced by the out-of-court identification.
Defendant objected to the State's identification testimony on the ground that the circumstances attending the out-of-court identification were such as to violate his right to counsel, both under the rule of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that of Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In the course of the colloquy between court and counsel it was clear defendant had in mind, in addition to the absence of counsel at the time of the identification, that the circumstances surrounding the identification were so unfair as to taint the in-court identification. This was based on the reasoning in Wade, supra, that an out-of-court identification made under circumstances suggestive to the witnesses of the belief of the police that the suspect being exhibited is the guilty party has a tendency to cause the witnesses to rely upon that identification rather than the observation made at the time of the criminal occurrence, when identifying the defendant in court (388 U.S., at pp. 232-237, 87 S.Ct. 1926).
The trial court apparently did not recognize the thrust of the latter feature of the defendant's objections. It did not rule on it. It did rule that the Miranda objection was not applicable because the focus of the investigation had not yet sufficiently concentrated on defendant (defendant has not relied upon Miranda on this appeal and we do not discuss the point any further). It further held that the right of a defendant to counsel at a lineup was not applicable in this case because the out-of-court identification had occurred prior to the decision of the Wade case on June 12, 1967. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 *424 L.Ed.2d 1199 (1967). However, it did rule that there was sufficient indication of possible unfairness in the circumstances surrounding the out-of-court identification as to warrant the excluding of the out-of-court identification on the basis of Rule 4 of the Rules of Evidence (1957) (prejudicial danger outweighing value of the evidence from a probative standpoint). Defendant declined to accept this offer, feeling that he ought to have the evidence of the out-of-court identification in the record in order to attempt to convince the jury that the circumstances attending it were such as to taint the reliability of the in-court identification.
Notwithstanding the waiver of the court's offer, aforementioned, defendant never abandoned his position that the in-court identification by the victims should be barred because tainted by the circumstances surrounding the out-of-court identification. As already noted, this particular objection was never ruled upon by the trial judge. We construe Wade to hold that in such a situation the trial judge should make his own determination as to whether, given an unfair prior confrontation for identification, the State can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the [out-of-court] identification" (388 U.S., at p. 240, 87 S.Ct., at p. 1939); People v. Ballott, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (Ct. App. 1967).
Undoubtedly the parading of defendant before the two victims, whether handcuffed to a detective or handcuffed and accompanied by a detective, constituted a confrontation violative of elementary principles of fairness in out-of court identification. See Wade, supra, 388 U.S., at page 234, 87 S.Ct., at page 1936, referring to the method of identification employed in Stovall v. Denno, supra, where the suspect was presented to the witness alone, handcuffed to police officers, as representing "a situation * * * clearly conveying the suggestion to the witness that the one presented is believed guilty by the police."
*425 In these circumstances we would ordinarily be inclined to remand the matter to the trial judge for a determination of the issue as to whether the totality of the circumstances establishes clearly and convincingly that the in-court identification was the independent product of the observation of defendant by the witnesses at the time of the robbery and not substantially contributed to by the circumstances of the out-of-court identification. In the present instance, however, the trial judge has passed away, and there is no opportunity to do this. Under the circumstances, we think it entirely consonant with the interests of justice for this court to consider whether the proof of record is sufficiently clear to enable us to make that fact determination, and we have decided that it is.
The closeness of the robber to the victim witnesses at the time of the robbery, and the added opportunity for carefulness of identification by the circumstance of some conversation between the robber and the witnesses, plus the positiveness with which Skopaz testified at the trial on cross-examination that the out-of-court identification did not contribute to his in-court identification but that the latter was derived entirely from his observations at the time of the robbery, satisfy us that it is clearly and convincingly established that the in-court identifications are not tainted by the circumstances of the out-of-court confrontation and identification. See also State v. Matlack, 49 N.J. 491 (1967) and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where the United States Supreme Court was satisfied that notwithstanding a less than ideal pretrial identification of defendant from various photographs, the identification of defendant by the witnesses at the trial was such as to warrant a conclusion that there was no taint from the prior out-of-court identifications. The court stated that the in-court identification would be set aside only if the improper out-of-court identification was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The court further concluded that in the circumstances of the case *426 before it there was little chance that the procedure utilized led to misidentification of defendant. The court noted that the robbery took place in the afternoon in a well-lighted bank and that the robbers wore no masks. This is closely comparable to the present facts.
The fact that the victims were shown four photographs with negative results and that prior to their out-of-court identification of defendant another individual was shown to them does not bear particularly on the issue we have to decide here one way or the other.
We thus conclude that on the record before us we are justified in finding as a fact that defendant was not prejudiced by being permitted to be identified in court by the victims of this robbery.

The Alibi Witness
Defendant contends the court erred in not permitting him to call an alibi witness, thereby depriving him of due process of law. The issue arose thusly: During the cross-examination of the State's last witness counsel conferred with the court out of the jury's presence. The discussion dealt with whether defendant would testify in his own defense in view of his prior criminal record. Defense counsel at that point, for the first time, indicated that if defendant decided to testify he wanted to call an alibi witness, even though defendant had failed to comply with R.R. 3:5-9 in not furnishing the data called for in the rule. Ultimately, defendant decided not to testify, so that his conditional request to offer an alibi witness was inferentially withdrawn.
In any event, R.R. 3:5-9 makes it discretionary with the court as to whether a noncompliance with its provisions will be waived. Considering the lateness of the application, the failure of defendant to indicate who the alleged alibi witness was or that he was even available, the court's refusal to waive the provisions of the rule was a sound exercise of his discretion. To have waived the provisions of the rule, at that point in the trial, would have been highly unfair *427 and prejudicial to the State  and an adjournment to allow the State to investigate the witness, and the information furnished, would not have cured this eleventh hour application. State v. Baldwin, 47 N.J. 379 (1966); State v. Garvin, 44 N.J. 268 (1965).

Supplementary Instructions to Jury
Defendant urges two issues of alleged error which occurred after the jury had retired to consider its verdict. They will be dealt with separately.
About an hour after the jury retired it asked to see the notes used by Detective Farley to refresh his recollection. The court denied the request telling the jury the notes had not been marked in evidence but only for identification, and therefore the jury could not have them. Defendant objected to this supplemental charge. He contends it may have misled the jurors to disregard any discrepancies they may have found to exist between the notes and Farley's testimony. This is a very nebulous objection and presupposes that the jury, when it made its request, had decided there was or might be some discrepancy. We should not be called upon to speculate. The supplemental instruction given was legally correct and, when considered in the light of the original charge, informed the jurors that they were the sole judges of the facts, and that "any views of mine are totally irrelevant, and it is your recollection of the evidence and your determination of the issues of the facts which will control." Reading the original and supplemental charges as a whole, the jury could not have been misled. If it was error not to charge as requested by defendant, it was harmless error.
The jury returned a second time and posed the following question:
"Agreement has been reached that a witness was 100 percent sure in his/her own mind when identifying a defendant. Does it follow that the jurors are bound to accept the identification as correct?"
*428 The court immediately gave the following supplemental charge to the jury:
"Now, the court cannot specifically help you in the determination of who to believe and where the truth lies. It is up to you to decide that.
If a witness testifies that he or she made this identification, it is up to you to decide whether or not to believe that witness and whether that is enough evidence to convict or acquit this defendant  I should say not acquit, but convict. You must decide after weighing the evidence, after weighing the credibility of each witness, whether or not you feel that the State has sustained its burden of proving this defendant guilty beyond a reasonable doubt.
In the search for the truth, you will consider what the witnesses said on the stand, and the impression they made upon you in the giving of their testimony as to truthfulness. You will consider the interest that they may have in the outcome of the case, and, in general, use your good common sense and experience in reaching a conclusion as to where the truth lies in this prosecution.
So, therefore to specifically answer this question, you are not bound to accept the testimony of anybody if you don't want to; but, if you are satisfied that they are telling the truth, and after weighing it and deciding that they are telling the truth and you are satisfied that the State has proven the defendant guilty beyond a reasonable doubt, then you must, of course, convict.
On the other hand, if after you have heard the testimony, and even though there is this 100 percent identification as is characterized by you in this note, you still feel this man is not guilty beyond a reasonable doubt, then you must acquit him.
Now, you may return to your deliberations."
No objection was made by defendant to this supplemental charge. He now contends it was inadequate in that the jurors "might have retired with the impression that if they believed the witness was telling the truth as he or she knew it that they were bound to accept the testimony."
We are again asked to speculate on what the jury might have done. Considering the original charge and this supplemental charge made in response to the last question, it is highly improbable that the jury retired under the impression that it necessarily had to believe a witness who was "100 percent sure" of the identification made. Counsel for defendant must have come to the same conclusion since he did not object to the supplemental charge. Having failed *429 to object, we should not reverse unless we find plain error to exist. State v. Hipplewith, 33 N.J. 300, 315 (1960). No such plain error exists here.

Ineffective Assistance of Counsel
Defendant contends he was ineffectively represented in that trial counsel did not move, before trial, to suppress evidence of the out-of-court identification; failed to properly argue the law on the admissibility of the identification testimony; failed to adequately explain to defendant the consequences of his waiving the court's contemplated ruling on the exclusion of the out-of-court identification, and failed to supply the State with the data called for under the alibi rule, all to defendant's prejudice.
A conviction, otherwise valid, will be reversed on appeal because of the ineffectiveness or inadequacy of counsel only if what he did, or failed to do, is of such magnitude as to thwart the fundamental guaranty of a fair trial. State v. Dennis, 43 N.J. 418 (1964). Putting it another way, to warrant reversal, defense counsel must have been so incompetent as to make the trial a farce or mockery of justice. Rivera v. United States, 318 F.2d 606 (9 Cir. 1963); State v. Bentley, 46 N.J. Super. 193 (App. Div. 1957).
We have examined and considered the entire record and find no justification or basis for the charges of ineffective representation. Defense counsel has been an active practitioner for about 40 years and his efforts on behalf of defendant indicate good trial preparation and technique. When experienced trial counsel adopts certain strategy in the trial of a case, and it turns out to be fruitless, such cannot be the basis for a reversal. State v. Williams, 39 N.J. 471, 489 (1963).
The conviction is affirmed.