111 N.J. Super. 182 (1970)
268 A.2d 35
STATE OF NEW JERSEY, RESPONDENT,
v.
LYNWOOD EDGE AND WALTER ROBBINS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1970.
Decided February 16, 1970.
*183 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Daniel R. Coburn, Assistant Deputy Public Defender, argued the cause for appellant, Lynwood Edge (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. John J. Urato, designated counsel, argued the cause for appellant, Walter Robbins (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. William Mountford, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. Vincent Panaro, Mercer County Prosecutor, attorney).
*184 HALPERN, J.A.D.
Defendants appeal final judgments of conviction for rape (N.J.S.A. 2A:138-1). They were each sentenced to indeterminate terms at Bordentown Reformatory with 15 year maximums.
The principal issue confronting us is whether the in-court and pretrial identification testimony of the 13 year old victim, which was not objected to, violated defendants' constitutional rights and should be recognized as plain error. Since our answer is in the affirmative, a summary of the relevant facts relating to the crime and identification procedures used becomes necessary.
The victim testified that on December 5, 1967 between 6:30 P.M. and 7 P.M. she was walking in the street when a car containing three men stopped. Two men emerged, one with a gun and the other with a knife, forced her into the car, and made her lie on the floor. They drove to a wooded area where the three men raped her. She noted the license number of the car when she was let off. The police were notified and subsequently the defendants were separately picked up as suspects and taken to police headquarters.

THE VICTIM'S IDENTIFICATION OF EDGE
She testified, that while on the car floor, she saw defendants' faces when they passed street lights, and when she exited from the car. She heard their voices while they talked. She described Edge to the police thusly "He was wearing like a cap, and he was kind of, oh, kind of tall, and not too tall, too, and he had on a dark jacket, dark pants." His hair "was short and kinky." The record does not indicate whether the description given fits Edge.
On December 6, 1967 between 9:45 P.M. and 11 P.M. (27-29 hours after the event) she was taken to the police station to identify Edge. She viewed Edge through a one-way mirror while he was talking to a police officer in a room, and was then brought face to face with and listened to him talk. *185 She then identified Edge as being one of her attackers because "he looked like the man."
It should be noted that Detective Mohr, who was in charge of the investigation, and was present at the police station confrontation, testified that the victim at first hesitated  walked away from Edge and he said to her "Is this the man that raped you?"  again she said nothing but went back and took another look  once again he asked her "Is this the man that raped you?", and finally she answered "Yes, he did." He also testified he had previously shown her a photo of one Robert Edge, but while she thought it looked like one of her assailants she could not identify him.
At the trial, without objection, she testified to the pretrial identification, and then identified Edge in the court room.

THE VICTIM'S IDENTIFICATION OF ROBBINS
She testified that Robbins drove the car, and she could see part of his face from her position on the floor of the car. She described him to the police thusly "He was kind of tall and between medium and slim build, and that he had a black kerchief or scarf around his head with a cap on or a hat or something like that, and that he was kind of dark in complexion." At one point she said his skin was "very dark" although in her written statement to the police she called it "medium brown skin." Again, the record does not indicate whether the description given fits Robbins.
On December 6, 1967, she was shown two or three photos and identified one of them as Robbins. On December 7, 1967, at about 2:25 P.M., (almost two days after the event), Detective Mohr took her to the police station and on the way told her they had the man she had identified. She then identified Robbins by looking at him through the same one-way mirror. The only persons then present were Detective Mohr and her father.
*186 At the trial, without objection, she testified to the pretrial identification, and then identified Robbins in the court room.
Admittedly, the defendants were not advised of their right to have counsel present at the pretrial confrontations, nor is it contended by the State that such right was then waived. These confrontations occurred at a critical stage of the case and the defendants should have been afforded the aid of counsel. In view of the victim's age, her highly emotional state, the vague description of the defendants furnished to the police, her difficulty in making an effective observation while in the car, and the fact that no emergency existed, made it essential that any pretrial identification be conducted with all constitutional safeguards. Since these pretrial confrontations occurred after Wade, Gilbert, and Stovall, infra, were decided, having taken place after June 12, 1967, the exclusionary rule enunciated in those cases is applicable since defendants were not represented by counsel, nor had they intelligently and voluntarily waived their right to counsel.
We hold that the face to face pretrial identification procedure used in this case was unduly suggestive and constituted a "singling out" of the defendants, making it fundamentally unfair and violative of due process and their right to counsel under the Sixth and Fourteenth Amendments as expressed in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As was aptly stated in Stovall, at page 302, 87 S.Ct. at page 1972: "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." We recognize there may be exceptions to this standard but no proofs were offered in this case to make such exceptions applicable. This error, in view of the weakness of the identification testimony, had a clear *187 capacity to bring about an unjust result and should be recognized as plain error. State v. Hock, 54 N.J. 526 (1969); People v. Kelly, 12 N.Y.2d 248, 238 N.Y.S.2d 934, 189 N.E.2d 477 (N.Y. Ct. App. 1963). Defendants were entitled to have counsel present even though they had not yet been indicted; and to be advised of their constitutional rights by appropriate warnings as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This entire subject was carefully considered and passed upon by the court in Rivers v. United States, 400 F.2d 935 (5th Cir.1968) where the court said:
After close examination of the record, we are compelled to conclude that fundamental error of constitutional proportions of the Wade-Gilbert-Stovall type, not raised at trial or on appeal, was committed by allowing testimony into evidence regarding an out-of-court identification of the accused while he was unrepresented by counsel. We thus vacate and remand for further proceedings. (at page 937)
The decisions of the Supreme Court in Wade and Gilbert put it in terms of right to counsel. They held that confrontations between suspects and witnesses were a "critical stage" of the criminal proceedings against an accused and counsel must be present at these confrontations unless waived. With Miranda on the books, it is indisputable that most, perhaps all, confrontations occurring after arrest will fall within the rules announced in Wade and Gilbert. (at page 939)
The right to the aid of counsel is not a mere formality, it is the essence of justice. Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
The question remains whether we should reverse and order a new trial; or remand it to the trial court to determine whether the in-court identification had an independent origin so as to make it admissible, thus removing the taint of the improper pretrial identification; or whether we can say, from the entire record, that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The trial judge having retired from office we are unable to remand the case to him for consideration of the issues involved. Therefore, we have decided to reverse and order a *188 new trial because evidence of the improper pretrial confrntation was adduced at the trial and we are unable to say, from the record, that it was harmless error. More importantly, since no objection was made to the identification testimony, the State did not have the opportunity of showing that such testimony may have had a source other than the police station confrontations. Thus the record is inadequate for us to make our own determinations on the problems of taint and harmless error. Finally, other trial errors were committed, which we will refer to later, that makes a new trial desirable on all issues. People v. Damon, 24 N.Y.2d 256, 299 N.Y.S.2d 830, 247 N.E.2d 651 (N.Y. Ct. App. 1969).
For guidance at a new trial we suggest that before the State offers in-court proof of identity, the court hold a taint hearing out of the jury's presence for the court to determine whether the in-court identification had an independent origin purged of the improper pretrial confrontation. Wade, supra, 388 U.S. at p. 241, 87 S.Ct. 1926, Clemons v. United States, 133 U.S. App. D.C. 27, 408 F.2d 1230, 1237 (D. of C. Ct. App. 1968). The burden of proof will be on the State to establish, by clear and convincing evidence, that it was based upon observations of the defendants other than the improper pretrial confrontations. Gilbert v. California, supra. State v. Woodard, 102 N.J. Super. 419 (App. Div. 1968), certif. den. 53 N.J. 64 (1968), cert. den. 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969).
If the court determines the in-court identifications are not based on an independent source, the State will be barred from offering testimony on identity which are the fruits of the improper pretrial confrontations. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
If the court determines the in-court identifications are based on an independent source and not tainted by the improper pretrial confrontations, then an in-court identification may be made. Gilbert v. California, supra, 388 U.S. at p. 273, 87 S.Ct. 1951. The ultimate issue of credibility *189 should be left to the jury. The defendants, if they so desire, may cross-examine on all phases of the identification testimony, including the pretrial confrontations in order to attack the weight to be given the in-court identification.
We turn to other claims of error and find the court failed to charge on "alibi" even though requested to do so by defendants. We are cognizant of the holding in State v. Garvin, 44 N.J. 268 (1965) that it is not plain error not to charge on "alibi"  nevertheless, when requested, it should be charged. See Garvin, at page 275.
The court failed to charge on the "presumption of innocence." Here again, while such may not be prejudicial error where "reasonable doubt" is charged, the presumption is so basic and fundamental that it should always be charged and not left to inference.
We make no comment concerning certain rulings on evidence (mentioned in the dissent filed herewith) since we do not know what form they may take at the new trial.
Reversed, and remanded for a new trial.
SULLIVAN, P.J.A.D. (dissenting).
I cannot agree that the record in this case requires a reversal of the judgments of conviction. The victim's testimony as to the pretrial identification of the defendants and her courtroom identification of these defendants was given and made without any objection. If there had been an objection I agree that the trial court would have had an obligation to conduct a hearing and make appropriate findings. State v. Woodard, 102 N.J. Super. 419 (App. Div. 1968), certif. den. 53 N.J. 64 (1968), cert. den. 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969). A failure to object at this critical stage of the trial was tantamount to a concession that these identifications were not unduly suggestive or tainted and, in my opinion, bars defendants from raising this issue on appeal.
The same holds for the contention that defendant Edge's constitutional rights were violated by the testimony of his *190 statement as to his whereabouts given to the police while in custody. There was no objection to this testimony and, for the reason above stated, I would hold that defendant may not for the first time raise the issue on appeal. Moreover, it is reasonably inferable from the proofs that the statement was given after defendant had been advised of his rights.
The judge's charge to the jury is open to some criticism particularly in the light of the request made. However, taken as a whole, it was adequate and in my opinion properly instructed the jury as to the pertinent legal principles to be applied.
Defendant Robbins' contention that he was prejudiced by the testimony of Edge's attorney is contradicted by the fact that the jury also found Edge guilty. Obviously this "neutralizing" testimony was not a factor in the jury's verdict.
The other points raised by defendants lack substance.
The case against these defendants is not based entirely on the victim's identification of them. There was strong evidence directly connecting these defendants with the motor vehicle used in the commission of the crime. Indeed, defendants, when they took the stand, verified the connection shown. I would not subject this young girl to the ordeal of a retrial of this rather revolting rape case. The record does not warrant it.