**Hal K. FERGUSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1325.**

Supreme Court of Alaska.

Sept. 24, 1971.

ERWIN, Justice.

In the early morning hours of January 10, 1970, flames and smoke were observed in the attic of a house located at 8442 Dunlap Street by Anchorage Assistant Fire Chief Bagley and State Trooper Rudolph who had the house under surveillance. Appellant, Ferguson, in possession of the unoccupied house, was subsequently charged, arrested, and convicted of first degree arson.[1] Because much of the circumstantial evidence presented against him was the product of illegal searches,[2] we reverse.[3]

Appellant had purchased the property on July 7, 1969, from Miss Darlene Nickalaski under a warranty deed expressly made subject to an unrecorded real estate contract between Miss Nickalaski and her grantors, Sam P. Sauer and LaDonna Sauer, the balance on which appellant agreed to pay.[4] The Sauer contract, executed on October 25, 1966, included a foreclosure right upon default in payments.

The small, wood frame, two-bedroom house with attached garage was apparently in a state of serious disrepair when purchased by appellant. A self-employed building contractor by trade, appellant effected considerable refurbishing of the house, including constructing an outside rock wall, replacing the interior sheet rock, and topping off the project with a pitched roof constructed over the old flat roof. Three renters subsequently occupied the revitalized premises during the remainder of 1969.

On January 6, 1970, Mr. Sauer entered the garage of the then vacant house in or-

---

Edward J. Reasor, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

---

1. A violation of AS 11.20.010. Appellant was sentenced to five years' incarceration.

2. The fourth amendment to the United States Constitution provides:
 Searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and par-

 ticularly describing the place to be searched, and the persons or things to be seized.
 Art. I, Sec. 14 of the Constitution of the State of Alaska provides similar protection.

3. Because of this disposition of the case, we reach only one of the myriad other assignments of error raised by appellant.

4. Appellant purchased the house under his business name of O. K. Construction Co.

der to assuage his fears that the furnace might have been shut off, allowing the water pipes to freeze in the severe Anchorage winter. Appellant's remote grantor discovered instead a hole in the garage ceiling, near which he observed small shavings, matches and a cigarette butt. Being suspicious, Mr. Sauer contacted Anchorage Assistant Fire Chief Bagley. Without a warrant, Bagley and Bureau Fire Marshall Joe Hildreth entered the garage later the same evening. They took pictures, seized the cigarette butt, and placed the house under surveillance.

A second warrantless entry occurred in the early morning hours of January 8, 1970, apparently for the purpose of placing detection powder in the attic. The expedition yielded unexpected confirmation of their arson theory when Bagley and Trooper Rudolph observed a burning candle atop the incendiary material. Rudolph blew out the candle, and Bagley dusted the detection powder around the edges of the hole in the attic.

Night surveillance was continued, the officers stationing themselves in a house across the street. At approximately midnight on January 9, 1970, Trooper Rudolph observed a bearded man outside 8442 Dunlap for a period of five seconds, shining a light toward the eaves of the house. Rudolph testified at trial that the man resembled appellant. Smoke and fire in the attic were discovered several hours later.

Appellant arrived on the scene sometime after 3:00 a. m., having been notified of the fire by a neighbor. Appellant voluntarily went to trooper headquarters where he was subjected to a black light test for detection powder. The test registered positive, and appellant was charged with first degree arson.[5]

Appellant claims as error the denial of his pre-trial motion to suppress his jacket, levis and boots, on which was found the detection powder, along with the cigarette butt and all pictures taken prior to the fire, as fruit of unlawful searches.[6] Additionally, he argues on appeal that under Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963), the officers' testimony regarding their pre-fire observations, the results of the detection powder test, and certain tangible evidence otherwise legally seized at appellant's residence, were tainted. Since the superior court ruled the searches lawful, the issue of the scope of the taint never arose, and no waiver as to the latter items has occurred. Since these items constituted almost the entire state's case against appellant, reversal is required if the two searches were unlawful.

The state seeks to justify the entries by Assistant Fire Chief Bagley and Bureau Fire Marshall Joe Hildreth on January 6 and Bagley and Trooper Rudolph on January 8 under two theories.[7]

The state's first theory is that Sauer's consent to the entries was valid, Sauer possessing "an equal and independent right of access to the premises for the purpose of protecting his property interest and preventing waste."[8] By limiting Sauer's pow-

---

5. At the trial, appellant admitted having cut the hole in the garage ceiling in order to make electrical wiring repairs, and testified that he had entered the attic the morning of January 9, after the placement of the detection powder, for the purpose of taking necessary measurements.

6. A similar motion made at the close of trial was also denied.

7. The state does not reassert its argument below that the entries were justified as necessary to alleviate an imminent danger to the public safety. See, e. g., People v. Wojciechowski, 31 A.D.2d 658, 296 N.Y.S.

2d 524 (1968) (knowing of threat against complainant's life, police entered defendant's apartment to protect complainant after defendant entered with a gun); People v. Gatti, 29 A.D.2d 617, 285 N.Y.S.2d 437 (1967) (police entry into premises under surveillance in burglary investigation after noticing flames). Cf., Stevens v. State, 443 P.2d 600 (Alaska 1968), cert. denied 393 U.S. 1039, 89 S.Ct. 662, 21 L.Ed.2d 586 (1969).

8. This court recently utilized a third party consent theory to uphold the warrantless search of a cargo van. McGalliard v.

er of consent to entries by officers to protect the property, the state seeks to distinguish Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (consent of landlord to entry by police into defendant-tenant's house after noting strong "odor of mash" held invalid), and Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, reh. denied, 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964) (consent of night clerk to search of defendant's hotel room for evidence of armed robbery held invalid). The state concedes that in both these cases, the power of the consenting party to enter himself for limited purposes was held not to create a power of consent. However, the state insists that a different result should obtain where the consent is to a search directly related to a property interest of the consenting party. We disagree.

The state places emphasis on the fact that the Court in *Chapman* stressed that the officer's purpose in entering was not to view waste but to search for distilling equipment. The state asserts that this is dictum "which suggests that a landlord can consent when potential waste is involved." However, in *Chapman* the Court's statement that the landlord's consent was not given with a view to protecting his property from waste was merely one of several alternative answers to the contention that a person who has the right to view waste

has the power to consent to a search. Another answer was as follows:

[T]o uphold such an entry, search and seizure "without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only on the discretion of [landlords]." * * * Moreover, "it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is now largely historical." [9]

The state has cited no cases, and none have been found, which have relied upon the distinction now urged to uphold a warrantless search.[10] Nor would adopting such an exception to the warrant requirement of the fourth amendment appear well advised. Several reasons strongly weigh against such a course. First, the law of search and seizure should be written with a view to those whose conduct it is meant to control. Subtle distinctions, which even lawyers find hard of application, should be avoided. Second, the danger of pretext searches, although clearly not present in this case, requires that any new exception to the warrant requirement, no matter how reasonable in terms of its purpose, be

---

State, 470 P.2d 275 (Alaska 1970). We held that since Sea Land, the owner of the van, enjoyed in that instance an independent unrestricted right of access to the van, including the authority to transfer cargo to another van, it had the power to consent to the entry of police officers. We cautioned, however, that

[b]ut for Sea Land's general unrestricted right of access to the interior of the van * * * we would * * * hold the warrantless search could not be sustained on the basis of any inspection rights Sea Land possessed. * * * 470 P.2d at 279.

9. Chapman v. California, 365 U.S. 610, 616, 81 S.Ct. 776, 780, 5 L.Ed.2d 828, 833 (1961).

10. The state places reliance on Spencer v. People, 163 Colo. 182, 429 P.2d 266 (1967), People v. Gorg, 45 Cal.2d 776, 291 P.2d 469 (Cal.1955), and Vandenberg v. Superior Court, 8 Cal.App.3d 1048, 87 Cal.Rptr. 876 (Cal.App.1970). However, each of these cases involved consent by the owner of the premises who both lived in the house himself and had apparent authority to enter the defendant's room. Although the rationale of these decisions has been criticized, *see* Bender, Third Party Consent to Search and Seizure: A Request for Reevaluation, 4 Crim.L. Bull. 343 (1968); Note, Effective Consent to Search and Seizure, 113 U.Pa.L. Rev. 260, 272–73 (1964), the rationale is not inconsistent with the decisions in *Chapman* and *Stoner.*

viewed with caution.[11] Finally, we can see no compelling reasons of exigency for abandoning the general warrant requirement of the fourth amendment in cases where a security interest holder believes non-imminent waste may occur on the property.[12]

The state also attempts to justify the entries, even assuming that Sauer did not have actual authority to consent, on the ground that the officers reasonably believed that Sauer had such authority. The state relies on the following language by Justice Traynor from People v. Gorg, 291 P.2d 469, 473 (Cal.1955), which held that the home owner's consent to the search of a room defendant occupied was effective:

> [T]he officers were justified in concluding that Stevens had the authority over his home that he purported to have, and there was nothing unreasonable in their acting accordingly. In this proceeding we are not concerned with enforcing defendant's rights under the law of trespass and landlord and tenant but with discouraging unreasonable activity on the part of law enforcement officers. * * * [W]hen * * * the officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority.

*Gorg* has been followed in People v. Hill, 69 Cal.2d 550, 72 Cal.Rptr. 641, 446 P.2d 521 (Cal.1968) aff'd, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (upholding search as incident to arrest since police honestly and reasonably believed that the man they arrested on defendant's premises was the defendant), and People v. Superior Court, 3 Cal.App.3d 648, 83 Cal.Rptr. 732 (1970) (upholding search as officers were justified in relying on the landlord's consent to entry under circumstances which indicated that a de facto eviction had occurred).

Assuming that we would follow the above California cases, their rationale is not applicable here. In contrast, there is nothing in the record below which would indicate a reasonable belief on the part of the officers that Sauer had the power to consent to a search. Indeed, Assistant Fire Chief Bagley's own testimony demonstrates that he did not know whether Sauer had foreclosed on the property,[13] and that he relied in not obtaining a warrant merely on his belief that Sauer probably had some interest in the property.[14] The impression left from a reading of the record of the suppression hearing is that Bagley, himself a previous occupant of 8442 Dunlap Street, was simply unaware of any privacy interest that he might be invading.

██ We hold that the warrantless searches by Bagley, Hildreth and Rudolph cannot be justified under a theory of third

---

11. We note the large number of Alaskan houses financed each year through the Federal Housing Administration. Alaska Survey and Report: 1970–71 (1970) at 168. It would be an anomalous situation in which law enforcement agencies could turn to the F.H.A. rather than to the courts for authority to search a private residence.

12. We again note that no argument is made here that the entries were justified under an exigency exception to the warrant requirement.

13. "I'm not clear whether or not in fact he had repossessed it, was going to do it or was intending to do it but he did in-

dicate he was concerned about the property because nobody was there and the furniture had been removed from the property." Appellant was two months in arrears in his purchase payments; Sauer had contacted his attorney about foreclosing, and preliminary foreclosure steps had apparently been taken.

14. "The only—I believe that Mr. Sauer—well, in fact, I knew that Sister Maur—Mister Sauer—had, oh, how should I say it, a legal interest or a financial interest in this property from previous transactions and I had no reason to doubt that he did not at this time have interest in this property."

party consent to search, Sauer being possessed with neither actual nor apparent authority to consent.

The state's second theory is that the two entries did not violate appellant's constitutional right of privacy because the action of the officers was reasonable under the circumstances of this case. On first impression, the searches herein might appear to be justified under the propositions that the fourth amendment prohibits only unreasonable searches, and that reasonableness must be determined under the facts and circumstances of each case.[15] Appellant was not at that time living in the house, the amount of physical intrusion was slight, Sauer was apparently in the process of foreclosing, and there is no indication of bad faith on the part of the officers.

However, the availability of the general reasonableness notion where the search is of a house has been foreclosed by the United States Supreme Court, whose decisions are controlling. In Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), the Court adopted the view that in traditionally protected areas a warrantless search may not be made, even though the officer who proposes to undertake the search has probable cause to believe that the place to be searched contains evidence of a crime, except under certain narrowly defined circumstances (e. g., incident to arrest, exigent circumstances, consent).[16]

In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court adopted the view originally espoused by Justice Frankfurter in his dissent in United States v. Rabinowitz, 339 U. S. 56, 68, 70 S.Ct. 430, 94 L.Ed. 653, 661 (1950), the majority opinion of which is the most commonly cited authority for the general reasonableness theory. Justice Frankfurter viewed the term "reasonableness" under the fourth amendment as historically requiring a warrant except in certain narrowly circumscribed situations.

The theory that "reasonableness" under the fourth amendment is a term of art was used to extend the warrant requirement to civil administrative searches by policemen, firemen, and health officials in the companion cases of Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930 (1967), and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The Court held that general administrative searches into nonpublic areas to enforce health, building or fire standards are prohibited without a search warrant.[17] The Court did not prohibit emergency searches conducted without a warrant, but defined an emergency as a "compelling urgency to inspect at a particular time or on a particular day." Camara v. Municipal Court, *supra*, 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941.

■ Since the facts of this case do not indicate a compelling urgency to immediately search, and because the entries were without a warrant, the searches made violated the fourth amendment to the United States Constitution.

We wish to stress that the question before us is not whether this type of search may constitutionally be made, but whether they may be made without a warrant. As Justice Jackson explained in Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948):

> Crime, even in the privacy of one's own quarters, is, of course, of grave concern

---

15. Sleziak v. State, 454 P.2d 252, 256 (Alaska), cert. denied, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969); Weltz v. State, 431 P.2d 502, 505–507 (Alaska 1967); Ellison v. State, 383 P.2d 716, 719 (Alaska 1963).

16. *Cf.* Fresneda v. State, 458 P.2d 134 (Alaska 1969); Pope v. State, 478 P.2d 801 (Alaska 1970).

17. The Court set forth general standards under which such a warrant could issue and indicated a differentiation between private dwellings and commercial buildings in the determination of whether probable cause to issue a warrant is established.

to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

 To avoid error on retrial we will briefly discuss another of appellant's contentions on appeal: that the trial court committed error in refusing to instruct on alibi. After review of the facts of this case we are convinced that the appellant presented sufficient evidence in the record to support his request for such an instruction.[18]

 There is a split of authority over the necessity of giving an alibi instruction in a proper case. The minority rule[19] is that a refusal to give such an instruction is never reversible error since proof of alibi negates an essential element of the crime, rather than showing an affirmative defense, and so is sufficiently dealt with under instructions relating to reasonable doubt. Although it is difficult to perceive how the failure to instruct on alibi could ever be plain error,[20] where request is made in a proper case we think the above rule is overly technical. Instructions serve purposes other than to inform the jury on the law applicable to the case, one such other purpose being to remind the jury of the main factual disputes raised during trial. Moreover, without proper instruction the jury might erroneously believe that the defendant has the burden of proving alibi.[21] For these reasons we join the majority of courts[22] which hold that

18. The factual basis for appellant's claim of alibi was as follows: Defense witness Terry Pyrah testified that appellant had not left the house after 5:00 p. m. on January 9. She testified she was up until 2:30 a. m. January 10, and that she could see appellant's feet from where she was sitting. According to the appellant, he and Terry Pyrah arrived home about 4:55 p. m. on January 9, and he went to bed early, and only got up around 1:00 or 1:30 a. m. to get some coffee.

The prosecution did not present specific testimony as to when the fire was set. It did present testimony that an attempted arson had occurred on January 8, involving the use of a lighted candle burning down into flammable materials, that similar candles around ten inches long were found in the home of Terry Pyrah in which appellant was then living, and that at approximately midnight on January 9 Tropper Rudolph observed with binoculars a bearded man who resembled appellant shining a flashlight on the eaves of the 8442 Dunlap premises.

19. See, e. g., State v. Hess 9 Ariz.App. 29, 449 P.2d 46, 50–51 (Ariz.App.1969); People v. Westcott, 86 Cal.App. 298, 260 P. 901, 910 (1927); Parsley v. Commonwealth, 321 S.W.2d 259, 260–261 (Ky. 1958); Jenkins v. State, 22 Wyo. 34, 134 P. 260, 268 (1913).

20. See, e. g., Roper v. United States, 403 F.2d 796, 798 (5th Cir. 1968); Levin v. United States, 119 U.S.App.D.C. 156, 338 F.2d 265, 274–275 (1964), cert. denied 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed. 2d 701 (1965); Holm v. United States, 325 F.2d 44, 45 (9th Cir. 1963). But see State v. Leach, 263 N.C. 242, 139 S.E.2d 257 (1964).

21. See Johnson v. Bennett, 414 F.2d 50 (8th Cir. 1969); Stump v. Bennett, 398 F.2d 111 (8th Cir.), cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed. 2d 466 (1968); Thornton v. Stynchcombe, 323 F.Supp. 254, 256 (N.D.Ga. 1971); and Parham v. State, 120 Ga. App. 723, 171 S.E.2d 911 (1969), for cases invalidating burden-shifting alibi charges as contrary to due process. Cf. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368, 375 (1970) (holding that due process requires that every element necessary for a finding of guilt be proven by the state beyond a reasonable doubt).

22. See, e. g., 5 Anderson, Wharton's Criminal Law & Procedure § 2098 at 267 (1957); Annot., 118 A.L.R. 1303, 1312 (1939); People v. Morris, 90 Ill.App.2d 208, 234 N.E.2d 52 (1967); State v. Simon, 375 S.W.2d 102, 106 (Mo.1964); State v. Edge, 111 N.J.Super. 182, 268 A.2d 35, 39 (1970); People v. Ciprio,

where there has been sufficient evidence to raise an issue of alibi, and an alibi instruction has been requested, the failure to so instruct constitutes prejudicial and reversible error.[23]

Sufficient evidence to raise an alibi issue exits when the defendant's evidence, if believed, reasonably excludes the possibility of his presence at the time and place of the alleged offense; the defendant's evidence must tend to prove that it was impossible or highly improbable that he was at the scene of the crime when it was alleged to have occurred.

The judgment herein is reversed and the case is remanded to the superior court for further proceedings in conformity with this opinion.

30 A.D.2d 956, 294 N.Y.S.2d 305, 306 (1968); Jones v. State, 398 S.W.2d 753 754 (Tex.Cr.App.1966).

23. The following would be an adequate instruction on alibi:

Evidence has been introduced tending to establish an alibi, which amounts to a contention that the defendant was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.

If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.

Compare, 1 Devitt & Blackmar, Federal Jury Practice & Instructions § 11.31 at 246–47 (1970).